# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

**No. 20-1334**

**September Term, 2020**

FILED ON: JUNE 25, 2021

PMCM TV, LLC,

APPELLANT

v.

FEDERAL COMMUNICATIONS COMMISSION,

APPELLEE

AND

CONNECTICUT PUBLIC BROADCASTING, INC., ET AL.,

INTERVENORS

---

On Appeal from Orders of the
Federal Communications Commission

---

Before: ROGERS, TATEL, and WALKER, *Circuit Judges*.

## **JUDGMENT**

The FCC granted a license to Connecticut Public Broadcasting, Inc. for its TV station, WEDW. A competitor, PMCM TV, LLC, appeals that decision.

We heard PMCM's appeal on the FCC record and the parties' briefs. *See* Fed. R. App. P. 34(a)(2)(C); D.C. Cir. R. 34(j). The panel fully considered the issues and determined that a published opinion is unnecessary. *See* D.C. Cir. R. 36(d).

We **DISMISS** PMCM TV, LLC's appeal.

I

Connecticut Public Broadcasting applied to the Federal Communications Commission for a two-site distributed transmission system license. A distributed transmission system uses multiple transmitters spread across a station's viewing area, rather than just a single transmitter. Multiple transmitters improve a station's signal for hard-to-reach viewers. Connecticut Public Broadcasting

1

wanted a distributed transmission system license for WEDW, an educational TV station that it operates, which we'll call the Station, as well as its channel-sharing partner WZME.

Under the FCC's rules, Connecticut Public Broadcasting could apply to match the coverage area of the market's largest station. 47 C.F.R. § 73.622(f)(5). In its initial application, Connecticut Public Broadcasting named WABC-TV as the market's largest station, reaching 43,775 $km^2$.

A competitor named PMCM objected. It pointed out that WABC-TV's license had expired. In response, the FCC's Media Bureau replaced WABC-TV's coverage area with the coverage area for a station owned by PMCM. PMCM's station reached 42,605.5 $km^2$.

Also in its initial application, Connecticut Public Broadcasting listed Bridgeport, Connecticut as the Station's reference point. That means the Station would calculate distances from Bridgeport when determining where it could place its transmitters and thus to where its signal could extend.

Later, Connecticut Public Broadcasting asked the FCC to move the Station's reference point about 20 miles southwest from Bridgeport to Stamford. Although the Station's reference point would change, Connecticut Public Broadcasting did not plan to build a transmitter in Stamford.

Instead, it planned to use a transmitter on the Empire State Building in New York City, which would sync with the Bridgeport transmitter. Hence the Station's need for a license to build a *distributed* transmission system. *See* 47 C.F.R. § 73.626(f)(3) (requiring that a transmitter's coverage be "contiguous" with another transmitter). PMCM again objected.

After the FCC rejected its arguments and granted a license to Connecticut Public Broadcasting, PMCM filed this appeal.

II

The FCC "possesses broad statutory authority to regulate broadcast media 'as public convenience, interest, or necessity requires.'" *FCC v. Prometheus Radio Project*, 141 S.Ct. 1150, 1155 (2021) (quoting 47 U.S.C. § 303); *see also id.* at 1154 ("Under the Communications Act of 1934, the Federal Communications Commission possesses broad authority to regulate broadcast media in the public interest.").

PMCM raises three arguments in this appeal. Each lacks merit.

A

First, PMCM challenges moving the reference point for the Station from Bridgeport to Stamford. The FCC reasonably found that the move "would eliminate interference, preserve service to existing viewers while also extending service, and make service available to viewers that point their antennas at New York City, where most of the market's other television stations' transmission facilities are located." J.A. 179-80 ¶ 14. The FCC therefore "conclude[d] that using the Stamford site as the reference point for [the Station's application] serves the public interest." J.A. 179 ¶ 14 n.42.

PMCM argues the Station violated the FCC's rules by not formally applying to move its reference point from Bridgeport to Stamford. But the FCC determined that the Station remedied that purported mistake by asking for a new reference point in its brief responding to PMCM's objection. According to the FCC, nothing in the distributed transmission system order "provides that the public interest showing can only be set forth in the [application] rather than in response to an objection." J.A. 179 ¶ 14 n.43. We find the FCC's approach reasonable.

Even if PMCM had shown that the Station violated the FCC's rules or that the FCC misapplied them, it has not shown any prejudice from allowing the Station to argue in a response brief that granting its application was in the public interest. Indeed, PMCM took advantage of the robust opportunity to object to the Station's move by filing both a reply and a supplement. *See* J.A. 114-20 & 121-24.

Relatedly, PMCM says the FCC's regulations don't allow for a reference point based on "theoretical coordinates" rather than "actual facilities." Petitioner's Br. at 20. But PMCM did not raise that argument before the FCC. Section 405(a) of the Communications Act provides that the FCC must be "afforded [an] opportunity to pass" on all arguments made to a court. 47 U.S.C. § 405(a). PMCM acknowledges that it didn't expressly raise the issue before the FCC. Instead, it argues that "a reasonable Commission *necessarily* would have seen the question raised before [the court] as part of the case presented to it." *Time Warner Entertainment Co. v. FCC*, 144 F.3d 75, 81 (D.C. Cir. 1998). But "vague allusions," like those PMCM points to in its reply brief, "do not serve to satisfy the requirements of section 405(a)." *NTCH, Inc. v. FCC*, 841 F.3d 497, 508 (D.C. Cir. 2016). Thus, we may not consider PMCM's argument.

In any event, PMCM identifies nothing in the relevant regulations' text requiring a "reference point" to be based on an "actual facility." The FCC's contrary view that the regulations impose no such requirement is entitled to deference. *See Tenet HealthSystems HealthCorp v. Thompson*, 254 F.3d 238, 248 (D.C. Cir. 2001) ("When an agency regulation is silent or ambiguous with respect to the specific point at issue, we must defer to the agency's interpretation as long as it is reasonable."). And that interpretation is eminently reasonable; if the FCC had required the Station to put a transmitter in Stamford in order to move its reference point there, Connecticut Public Broadcasting would have had to build a facility in Stamford that it didn't plan to use — hardly a "wise use of resources." J.A. 180 ¶ 14.

B

Second, PMCM objects to how the FCC sua sponte used the coverage area of PMCM's station when it reviewed the Station's application. Recall that the Station used WABC-TV's coverage area in its initial application before PMCM pointed out that WABC-TV's license had expired.

For starters, PMCM's argument is disingenuous. It faults the FCC's Media Bureau for proposing a solution to the problem PMCM pointed out, *see* J.A. 122 & 132, and then faults the FCC for adopting that solution. *See* J.A. 181 ¶ 17.

3

PMCM also wrongly asserts it had "no opportunity" to assess whether its own station was an appropriate match. Petitioner's Br. at 25. It could have done so in its application for review before the full FCC. *See* J.A. 133-43.

Most of all, it's unclear how using the coverage area of the station PMCM owned, instead of WABC-TV's coverage area, prejudiced PMCM. As PMCM admits, WABC-TV's coverage area was 1,170 km$^2$ *larger* than the coverage area of PMCM's station. *See* Petitioner's Br. at 8 n.3. PMCM hasn't explained how granting the Station a *smaller* coverage area than it originally requested harms PMCM, even if it extended beyond the appropriate contours in two "minimal" extensions. J.A. 132.

PMCM also argues that a comparator station's "geographic coverage area" means its actual, as opposed to predicted, service area. Petitioner's Br. at 28 (cleaned up). The FCC has elsewhere explained that "the term coverage area defines the geographic region within which a signal is *predicted* to have a specified field strength." *National Association of Broadcasters v. FCC*, 789 F.3d 165, 179 (D.C. Cir. 2015) (cleaned up) (emphasis added). The regulations for distributed transmission systems also use the word "predicted," not actual. *See, e.g.*, 47 C.F.R. § 73.626(b) ("For purposes of compliance with this section, a station's 'authorized service area' is defined as the area within its *predicted* noise-limited service contour determined using the facilities authorized for the station in a license or construction permit for non-[distributed transmission system], single-transmitter-location operation.") (emphasis added).

C

Third, PMCM argues that granting the Station's application amounts to relocating its license, away from Connecticut, to New York City. To the contrary, the FCC reasonably found that granting the application "will not result in a loss of service, and in fact will *increase* service to viewers in western Connecticut." J.A. 182 ¶ 18 (emphasis added). Given that western Connecticut viewers would receive better service, PMCM's assertion is "wholly conjectural." *Id.*

\* \* \*

PMCM's appeal lacks merit. We therefore dismiss its appeal.

This disposition is unpublished. *See* D.C. Cir. R. 36. We direct the Clerk to withhold this mandate until seven days after resolution of a timely petition for rehearing or for rehearing en banc. *See* Fed. R. App. P. 41(b); D.C. Cir. R. 41(a)(1).

**FOR THE COURT:**
Mark J. Langer, Clerk

BY:    /s/
        Daniel J. Reidy
        Deputy Clerk